IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HAMMERHEAD GROUP, LLC d/b/a DECOWRAPS, <br><br>  Plaintiff, <br><br>  v. <br><br> PAUL E. RILEY, JR. and KIMBERLY R. PHILLIPS, <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Cause No.: 4:23-cv-00676 |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
<u>MOTION FOR PRELIMINARY INJUNCTION AGAINST KIMBERLY PHILLIPS</u>**

Plaintiff, Hammerhead Group, LLC d/b/a Decowraps ("Decowraps"), by and through its undersigned attorneys, for its Supplemental Brief in Support of its Motion for Preliminary Injunction Against Kimberly Phillips, states as follows:

**Introduction**

Expedited discovery and events that transpired after the filing of Decowraps' Complaint revealed that Paul Riley ("Riley") and Kimberly Phillips ("Phillips") conspired to steal, and did steal, additional trade secret information from Decowraps. Phillips' theft of Decowraps' trade secrets occurred the same day that Phillips resigned her employment with Decowraps and after she was solicited by Riley to join one of its direct competitors, Koen Pack USA, Inc. ("Koen Pack"). On July 17, 2023, Decowraps filed a Motion for Leave to File an Amended Complaint to, among other things, add Phillips as a defendant. That same day, Decowraps filed its Memorandum in Support of its previously filed Motion for Preliminary Injunction ("P.I. Memorandum"), which specified that Decowraps was seeking a preliminary injunction against both Riley and Phillips. Decowraps' Motion for Leave to File an Amended Complaint was granted on August 11, 2023,

1

and Phillips was served that same day. Decowraps now files this supplemental brief to address the preliminary injunction sought against Phillips under the Missouri Uniform Trade Secrets Act ("MUTSA") and the Defend Trade Secrets Act ("DTSA").

## Background Relevant to Kimberly Phillips

Riley and Phillips worked together for years at Highland Supply Corporation ("Highland Supply") before beginning to work at Jetram Products, LLC d/b/a Flopak ("Flopak"), which was later acquired by Decowraps' parent company, Decowraps Holdings, LLC. Phillips Dep. at 43:1-19.[1] Phillips was Riley's "main support person" at Flopak. Riley Dep. at 37:18-19. Among other things, Phillips helped Riley with entering orders, getting confirmations from customers, sending out samples, and helping with quotes for customers. Phillips Dep. at 33:22-25; 42:11-16. Although Riley attempted to downplay his reliance on Phillips at his deposition, on his very first day working at Koen Pack he admitted to a Flopak customer that Phillips was his "right hand:"

> Now we just got to get my right hand over here with me. I kinda feel lost without her to tell you the truth.

*See* the email dated April 3, 2023, attached as Exhibit D to the P.I. Memorandum, RILEY03838.

Phillips was so crucial to Riley that even before Riley left to work for Koen Pack he planned to recruit Phillips to come with him. During Riley's negotiations with Koen Pack about the job that he ultimately took, Riley wrote to Koen Pack's CEO, Marco Zwaan ("Zwaan"):

> I know how to do this, and have been successful. So I would like to see a package with more guaranteed money the first 2 years and then a more incentive based program starting in 2025, where we'll be hurting our competitors and taking serious market share. It's an investment and project on both sides, but I know it will work. I would also like to bring on another person to assist and make this all happen.

*See* the email dated March 4, 2023, attached hereto as **Exhibit A**, KOEN PACK 000351.

---

[1] The Deposition of Kimberly Phillips, which is attached to the P.I. Memorandum as Exhibit B, is abbreviated throughout as "Phillips Dep.," and the Deposition of Paul Riley, which is attached to the P.I. Memorandum as Exhibit A, is abbreviated throughout as "Riley Dep."

As set forth more fully in Decowraps' P.I. Memorandum, which is incorporated herein by reference, Riley then proceeded to recruit Phillips to join Koen Pack, by among other things: suggesting that Phillips would soon be working for Koen Pack (Text Messages at RILEY04441-42),[2] discussing with Zwaan the prospect of Phillips joining Koen Pack (Riley Dep. at 266:15-23, 268:2-9), sending Zwaan's contact information to Phillips (Text Messages at RILEY04449), asking Phillips about her "interest, reality, and where things stand" after Phillips and Zwaan spoke on the telephone on April 10, 2023 and offering to "turn up the heat if needed" (*Id.* at RILEY04451), and meeting with Phillips and Zwaan in Miami to discuss an employment opportunity at Koen Pack and "Koen Pack's vision of their company" (Phillips Dep. at 108:17-22 and 122:5-123:2). Zwaan then offered Phillips a job and instructed her to resign from Decowraps before Koen Pack would make an "official offer," in an apparent effort to create the false impression that she had not been recruited to leave Decowraps by Riley. Phillips Tr. at 125:13-126:19, 128:15-21.

Meanwhile, Phillips continued assisting Riley while she was still employed by Decowraps and while Riley was working at its direct competitor. Riley confided in Phillips that Scott Greathouse, a Decowraps salesperson, had reached out to Riley about help with quoting a customer, and that Riley thought it was a "tricky situation." Phillips 87:5-88:8; Text Messages at RILEY04442-43. It was tricky because Riley had lied to Decowraps about what his plans were after resigning, and therefore, Mr. Greathouse did not know at the time that he was asking a direct competitor for help about pricing for a customer whose business they were both attempting to win. Riley Dep. at 95:21-96:3. Phillips was the only one at Decowraps at that time who knew that Riley was working for Koen Pack and in competition for Decowraps' customers, yet Phillips did not

---

[2] Citations to the text messages between Riley and Phillips, which are attached to the P.I. Memorandum as Exhibit E, are abbreviated throughout as "Text Messages."

inform Mr. Greathouse or anyone else at Decowraps of that fact. Riley Dep. at 94:10-16. Instead, Phillips directed Riley to tell Mr. Greathouse to get last year's pricing from her and use it as a guideline. Text Messages at RILEY04442-43. Phillips then passed information on to Riley, informing him about the fact that Decowraps discovered that Riley was working at Koen Pack:

> From: +16183041129 Kim Phillips
> To: +16184073132 (owner)
> They now know...
>
> | Participant | Delivered | Read | Played |
> |---|---|---|---|
> | +16184073132 | | 4/12/2023 11:33:12 AM(UTC-5) | |
>
> Status: Read
>
> 4/12/2023 11:32:13 AM(UTC-5)

*Id.* at RILEY04453; Phillips Dep. at 111:1-21.

As more fully described in Decowraps' P.I. Memorandum, Phillips and Riley then coordinated to steal Decowraps' trade secrets and confidential information for use at Koen Pack. Specifically, early on the morning of May 22, 2023 – the day that Phillips had determined to send her resignation notice but before she actually sent it – Phillips printed (i) a 224-page Flopak "Sales by Customer Detail" report that contained the product, quantity, price, and shipping address for every order placed by every Flopak customer during the 2022 calendar year and (ii) a 22-page Flopak "Customer Contact List," which contains the names of all of Flopak's customers and the contact information of their key personnel. Phillips Dep. at 148:9-149:5, 181:21-182:25. Phillips then proceeded to retrieve the mass print job from the printer, put them in her laptop bag, and take all 246 pages home with her. *Id*. at 174:20-25.

**Argument**

Decowraps' P.I. Memorandum set forth the legal standard for preliminary injunctions and discussed that Decowraps is likely to succeed on the merits of its trade secret claims against Riley and Phillips (among other claims against Riley), the threat of irreparable harm to Decowraps if no injunction is entered, and that the balance of harms and the public interest weigh strongly in favor of entering an injunction. Those arguments are incorporated herein by reference.

Phillips' misappropriation of trade secrets is indisputable. She surreptitiously printed hundreds of pages early on a Monday morning, when she was the only person in the office portion of Decowraps' building, and on the day she was planning on resigning but *before* announcing her resignation. Phillips Dep. at 166:6-23. She loaded the printer with paper beforehand, retrieved the documents from the printer, stowed them away in her laptop bag, and took them home with her at the end of the day. *Id.* at 208:1-10; 174:20-25; 197:1-7. *Conseco Fin. Servicing Corp. v. N. Mortgage Co.*, 381 F.3d 811, 820 (8th Cir. 2004) (finding misappropriation where a former employee had copied customer files); *Phyllis Schlafly Revocable Tr. v. Cori*, 512 F. Supp. 3d 916, 933 (E.D. Mo. 2021) (finding misappropriation where former employee copied a database).

Nor can there be any dispute that the 22-page Flopak Customer Contact List and the 224-page Flopak Sales by Customer Detail report that Phillips stole are protectable trade secrets. The Customer Contact List contained a compilation of the names of all of Flopak's customers and contact information of their key personnel, among other information. Phillips Dep. at 181:21-182:25. Similarly, the 224-page Sales by Customer Detail report contained the product, quantity, price, and shipping address for every order placed by every Flopak customer during the 2022 calendar year. *Id.* at 148:9-149:5. That type of compiled customer information constitutes a trade secret. *See e.g. Perficient, Inc. v. Munley*, 4:19-CV-01565, 2019 WL 4247056, at *2 (E.D. Mo.

Sept. 5, 2019) (finding that trade secrets include "customer-focused information such as lists of potential customers and current customer's buying behavior and contact information; strategic information regarding marketing and . . . pricing models"); *Kessler-Heasley Artificial Limb Co., Inc. v. Kenney*, 90 S.W.3d 181, 189 (Mo. App. 2002). Phillips agrees. She admitted that she could think of nothing more valuable to a competitor than Decowraps-Flopak's Customer Contact List and Sales by Customer Detail Report. Phillips Dep. at 209:9-21.[3]

Decowraps expects Phillips, however, to contest the scope of the requested injunction or to argue that no injunction is necessary based on the fact that she was caught red-handed the next day by Decowraps and was forced to give back the 246 pages of trade secrets that she stole, among other Decowraps' information that she had at her home.

**I.      The Injunction Sought Here is Appropriate Given the Extraordinary Circumstances.**

Injunctive relief against Phillips for misappropriation of trade secrets is appropriate under both the DTSA and the MUTSA. The DTSA grants courts broad discretion to fashion injunctions "on such terms as the court deems reasonable," provided it does not "prevent a person from entering into an employment relationship" or "otherwise conflict with an applicable State law prohibiting restraints on the practice of a lawful profession, trade, or business." 18 U.S.C. § 1836(b)(3)(A)(i). Therefore, even in the absence of a non-compete, courts applying the DTSA can, and do, enjoin competition and impose other requirements on employment to protect trade secrets. *See*, *e.g.*, *Engility Corp. v. Daniels*, Civ. Act. No. 16-cv- 2473-WJM-MEH, 2016 U.S. Dist. LEXIS 166737, at *30-33 (D. Colo. Dec. 2, 2016) (applying DTSA to enjoin competition in the absence of a non-compete); *Capstone Logistics Holdings, Inc. v. Navarrete*, Civ. Act. No. 17-

---

[3] As discussed in the P.I. Memorandum, Decowraps also takes reasonable measures to protect its trade secrets, evidenced in this case by the speed with which Decowraps cut-off Phillips' access to crucial information after she resigned and the speed with which Decowraps detected Phillips' mass print job.

cv-4819(GBD), 2018 U.S. Dist. LEXIS 216940, 2018 WL6786338 at ¶ 225 (S.D.N.Y. Oct. 25, 2018) (imposing restrictions on employment under DTSA "[s]eparate and apart from Defendants' agreements"); *Waymo LLC v. Uber Technologies, Inc.*, 2017 WL 2123560, *13 (N.D. Cal. May 15, 2017) (enjoining an employee from working on certain projects under DTSA).

"Injunctive relief is a proper remedy under Missouri law for misappropriation of trade secrets." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 961 (8th Cir. 2007) (applying the MUTSA). Like the DTSA, the MUTSA also permits the entry of injunctions to remedy actual or threatened misappropriation and to remedy the type of unfair head start that a competitor may gain by stealing another's trade secret. Mo. Rev. Stat. § 417.455 ("the injunction may be continued for an additional period of time to eliminate commercial advantage that otherwise would be derived from the misappropriation"); *Synergetics*, 477 F.3d at 961 (8th Cir. 2007) (affirming a two-year injunction to remedy the "short cut" obtained through theft of trade secrets by measuring the time it would have taken defendants "to develop such data on their own through observation and investigation").

The scope of the injunction sought against Phillips is narrowly tailored to protect Decowraps against further disclosure or use of its trade secrets and confidential information. As more fully described in the revised proposed preliminary injunction order, which is attached hereto as **Exhibit B**, Decowraps seeks an injunction against Phillips ordering the return or deletion of all of Flopak and Decowraps documents, files, and information (and any copies thereof or documents derived therefrom) and enjoining Phillips from any further use or disclosure of that information.[4]

In light of the circumstances of this case, however, an added level of protection is necessary to ensure that Decowraps' trade secrets and confidential information have not been surreptitiously copied, photographed, or otherwise retained. Decowraps, therefore, also seeks an injunction

---

[4] A red-lined version of the proposed preliminary injunction order highlighting the changes between the revised version included herewith and the version included with Decowraps' P.I. Memorandum is attached hereto as **Exhibit C**.

enjoining Phillips from soliciting or assisting others in the solicitation of Flopak's customers. Like the defendant in *Engility Corp. v. Daniels* who claimed to no longer have access to trade secrets but could not be trusted and was enjoined from solicitation of customers, Phillips' anticipated testimony – if she sticks with the story she told at her deposition – will simply not be believable.

First, rather incredibly, Phillips claims that Riley had nothing to do with the mass print job. Yet, at 7:34 a.m. on the morning of May 22, 2023, around the same time that she started printing the Customer Contact List and the Sale by Customer Detail report, Phillips sent a text message to Riley requesting a telephone call. Text Messages at RILEY04470. After Decowraps received Phillips' resignation email on May 22nd, it changed Phillips' access such that she could no longer print. Phillips immediately reported that fact to Riley:





*Id.* at RILEY04471.

8

After detecting the mass print job, Decowraps then cut off *all* of Phillips' access to Decowraps and Flopak information.  The next morning when Phillips, who was working remotely at home that day, discovered that her access to Decowraps' and Flopak's information had been cut-off, she again immediately reported that fact to Riley:





*Id*. at RILEY04473.

Later that day when she was confronted about the mass printing from the day before, Phillips initially claimed to Decowraps' CEO, Steven Tchira, that she did not have the 246 printed pages in her possession and claimed to have left the mass print job on her desk at the Decowraps office.  Phillips Dep. at 197:17-198:6.  It was only after Mr. Tchira insisted that she look for the documents at her home, that Phillips admitted to having them in her laptop bag.  *Id*.  Mr. Tchira asked Phillips during that conversation what her future plans were, to which Phillips responded that she was planning on spending time with her family, omitting that she was planning to work for Koen Pack.  *Id*. at 193:8-194:14.  Phillips knew at the time that Koen Pack's "official" offer

9

would arrive after her resignation from Decowraps and officially began working at Koen Pack about three weeks later.  *Id*. at 193:14-194:7; 205:8-14.  Phillips also asserts that the mass printing and taking home of the Customer Contact List and the Sale by Customer Report had nothing to do with her future employment at Koen Pack.  *Id.* at 209:22-210:17.

To this day, Phillips asserts that the mass print job was merely an "accident," and that she intended to select "print to pdf" instead of printing to a printer.  Phillips Dep. at 171:13-18.  Phillips acknowledges, however, that the normal steps for printing a file to pdf did not occur when the first of the two documents was printed, but she then repeated the "mistake" again.  *Id*. at 173:5-174:5 and 174:6-14.  Although she claims the printing was unintentional, Phillips also admits that she loaded the printer with paper before the 246 pages were printed, a fact she attempted to explain away at deposition by claiming that she intended to copy receipts that she would submit for reimbursement, the copies of which total only 6 pages. *Id*. at 208:1-209:2; *See* the receipts attached to the P.I. Memorandum as Exhibit F, PLAINTIFF000003-7.  After "mistakenly" printing the documents, Phillips then proceeded to retrieve the mass print job from the printer, put them in her laptop bag, and take all 246 pages home with her on the same day that she submitted her resignation from the company.  Phillips Dep. at 174:20-25.

Phillips' hastily concocted cover story for needing to "print to pdf" in the first place also falls apart under the slightest scrutiny.  Phillips claims that a customer service representative was having trouble with a customer, and Phillips thought that if the customer service representative had access to the customer's historical ordering information, it would help resolve the issue.  *Id.* at 142:13-146:7.  So, Phillips thought – as the story goes – that she should send the customer service representative a report with the customer's historical ordering information.  *Id.* Rather than generate a report from Quickbooks for that single customer, which she admits was possible,

6883453/4/22075.000

Phillips generated a report for every single Flopak customer and then generated a separate report with every single customer's contact information, purportedly to also send to the customer service team so that they could more easily contact Flopak's customers. *Id.* at 148:6-149:10; 152:14-153:7.

When the two reports were generated by Phillips from Quickbooks, the content was exported into a Microsoft Excel spreadsheet file. *Id.* at 141:19-142:12, 175:6-176:24. Phillips claims that she desired to email the two reports to the Decowraps-Flopak customer service personnel but did not want to email only the spreadsheet file versions for fear that someone could accidentally edit them or delete a column accidentally. *Id.* at 170:22-171:3, 175:6-176:24. Phillips now admits that creating a pdf version of the spreadsheet files was unnecessary in the first place, since the customer service team could always look back to the static version of the spreadsheets that were in Phillips' contemplated email to the customer service team if anyone later altered or accidentally deleted anything in a different version of the spreadsheet file. *Id.* at 170:22-171:12.

There is no way of knowing for certain whether Phillips has retained copies, photographs, or some other method of retaining the information. Decowraps does not trust Phillips, and after hearing her story, the Court is unlikely to trust her either. Accordingly, the only way to ensure that Decowraps' trade secrets and confidential information are protected is to enjoin Phillips from soliciting Decowraps' customers. *See, e.g., Engility*, U.S. Dist. LEXIS 166737, at *30-33 (enjoining competition in the absence of a non-compete even though the defendant claimed to no longer be in possession of any trade secrets because the court found it "simply cannot trust" defendant); *Capstone Logistics*, 2018 WL6786338 at ¶ 225 (imposing restrictions on employment under DTSA where co-defendants staggered their exits from their former employer, with the second employee to leave lying about his future plans and stealing trade secrets on the way out the

11

door, including by using a USB drive to download thousands of files from the former employer, some of which contained confidential information about the former employer's customers); *Waymo*, 2017 WL 2123560 at *5-6 and 13 (entering injunction against former employee and noting that a defendant's word not to use stolen trade secrets "would be cold comfort against the danger of trade secret misappropriation" and that "it would strain credulity to imagine that [defendant] plundered [plaintiff's] vault the way he did with no intent to make use of the downloaded trove").

## Conclusion

For the above-stated reasons, the Court should grant Decowraps a preliminary injunction until trial in this matter or until further Court Order, as outlined in the Proposed Order attached hereto as **Exhibit B**.

Dated: August 25, 2023                                        Respectfully submitted,

**HAMMERHEAD GROUP, LLC d/b/a
DECOWRAPS,** Plaintiff.


 */s/ Matthew R. Barrett*
Matthew R. Barrett (admitted *pro hac vice*)
Hal J. Wood (admitted *pro hac vice*)
Nikita J. Desai (admitted *pro hac vice*)
**HORWOOD MARCUS & BERK
CHARTERED**
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
Phone: (312) 606-3200
mbarrett@hmblaw.com
hwood@hmblaw.com
ndesai@hmblaw.com

Justin A. Welply (65262MO)
Tyler C. Schaeffer (60847MO)
**CARMODY MACDONALD P.C.**
120 S. Central Ave., Suite 1800
St. Louis, Missouri 63105

6883453/4/22075.000

Phone: (314) 854-8721
jaw@carmodymacdonald.com
tcs@carmodymacdonald.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

By: */s/ Matthew R. Barrett*
Attorney for Plaintiff

6883453/4/22075.000